## SARTOR v. BEATY.

1. In the distribution of an intestate estate, the equitable doctrine of retainer for barred debts due to the estate by a distributee does not apply to the interest of such distributee in the real estate of the intestate, or in the proceeds of the sale thereof.
2. But such doctrine does apply to the personal estate, even though (1) the distributee has been discharged in bankruptcy as to such debt, (2) the note was held and claimed by the intestate for over twenty years as heir at law of the deceased payee, but without administration, or (3) the debt was assigned to the administrators of the intestate as a part of his distributive share in the deceased payee's estate, after the distributee debtor had assigned his distributive share to third parties.
3. The admission of a debt in a bankrupt's schedule of liabilities, is sufficient to rebut the presumption of payment.   So, too, is a judgment obtained.
4. After twenty years without acknowledgment, the law presumes that

the debt has been paid; for such a debt, therefore, the share of a distributee in the creditor's estate cannot be retained.

5. Where a distributee is indebted to the estate by a judgment having lien on lands, his interest in the proceeds of the real estate may be retained on account of such judgment.

6. *Wilson* v. *Kelly*, 16 *S. C.*, 216, affirmed.

7. The master should not testify as to facts which he is called upon to decide.


Before WITHERSPOON, J., Union, October, 1885.

This was an action by Mrs. M. A. E. Sartor, widow of John P. Sartor, against the administrators of said J. P. Sartor, and his nieces and nephews, for the partition and settlement of his estate. John P. Sartor died intestate January 16, 1884, possessed of a considerable estate, real and personal, leaving as his distributees and heirs at law, his widow and several nieces and nephews. Among the nephews were Robert Beaty, jr., W. S. McJunkin, and John W. Sartor, against whose interest in this estate the administrators alleged certain claims, based upon the facts below stated as to each.

Robert Beaty, jr., gave his sealed note for $3,437.73, in November, 1861, to William Sartor, son of John P., payable at one day. Said William died intestate and unmarried in August, 1862, leaving as his heirs at law his father and one brother, James W. This note then passed without administration into the possession of John P. In 1868, Beaty was adjudged a bankrupt, and in 1870 received his discharge. In his schedule of liabilities he stated this note as a debt due by him to "John P. Sartor;" and said John P. received dividends thereon. James W. Sartor died in 1881, leaving his father, John P., his sole heir at law. The amount due on this note October 1, 1885, was $8,580.49.

W. S. McJunkin gave his sealed note for $39.70 to John P. Sartor in November, 1862, payable at one day. On April 24, 1869, James W. Sartor obtained a judgment against said McJunkin for $5,100.45. On April 25, 1884, the administrator of James W. Sartor assigned this judgment, as a part of his distributive estate, to the administrators of John P. Sartor. McJunkin

went into bankruptcy, but was never discharged. On January 22, 1884, he assigned all his interest in the estate of his uncle to his (McJunkin's) children.

John W. Sartor (nephew of John P.) gave his two sealed notes to said John P.—one for $200, payable July 28, 1860, and one other for $200, payable August 11, 1861, credited with $12.25 on January 13, 1864.

Some of the defendants alleged that the personal estate of the intestate had been unfairly sold by the administrators, and that articles were purchased by them at an undervalue. Upon this subject the master testified in behalf of the administrators.

The master reported that all of the above named defendants must account for the above amounts out of their distributive shares in the estate; and that the sale of the personalty was fair and for full value. Upon exceptions by Beaty, McJunkin, and John W. Sartor to this report, the Circuit Judge passed the following decree:

The first, second, and third exceptions, in substance, allege that the master erred in finding and recommending that Robert Beaty, jr., should account for his note given to William Sartor out of his distributive share of the estate of the intestate, John P. Sartor. It is contended that the doctrine of equitable set-off or retainer does not apply. 1. Because the debts are not in the same right. 2. Because the debt has been discharged in bankruptcy. 3. Because the debt has been discharged by presumption of payment arising from lapse of time.

The payee of the note, William Sartor, died intestate in 1862, leaving as his distributees his surviving brother, James W. Sartor, and his father, John P. Sartor. John P. Sartor, the intestate, had the note in his possession, claiming it as his own at his death, and for a long time prior to his death. From the lapse of time, administration, or an assignment of the note, or anything else, would be presumed to give efficacy to the possession of the note by the intestate, John P. Sartor. In rendering a schedule of the list of his creditors, under oath in bankruptcy, Robert Beaty, jr., designates John P. Sartor as the owner and holder of said note. John P. Sartor and his son, James W. Sartor, the other distributee, both received dividends on said note in

bankruptcy, *in the name of John P. Sartor.* James W. Sartor died intestate, leaving his father, John P. Sartor, the intestate, as sole distributee.

As John P. Sartor was at least the equitable owner of said note at the time of his death, Robert Beaty, jr., would not be permitted, under the circumstances, to deny that said note is part of the assets of the estate of John P. Sartor, in a proceeding in equity, in which he is demanding a distributive share of said estate. In *Falconer* v. *Powe, Bail. Eq.,* 156, the court say : "Equity will enforce a discount of mutual demands between the parties *really interested*, although the demands are not in the same legal right, and therefore could not be set up in discount at law." The doctrine of equitable retainer is based upon the principle that he who seeks equity must do equity. Under the authority of *Wilson* v. *Kelly,* 16 *S. C.,* 216, the discharge in bankruptcy cannot avail the defendant, Robert Beaty, jr., in this action.

More than twenty years elapsed between the maturity of the note and the death of John P. Sartor, the intestate. If there has been no payment by the debtor, or acknowledgment of the debt during this interval, the note must be considered paid, notwithstanding the fullest conviction that it never has been paid. *Riddlehoover* v. *Kinard,* 1 *Hill Ch.,* 380. In the case of *Stover* v. *Duren,* 3 *Strob.,* 450, the court say : "Even an admission that payment has not been made, cannot of itself destroy the effects which considerations of public policy have given to a certain period of time, whether payment has or has not been made." In *Shubrick* v. *Adams,* 20 *S. C.,* 51, it is held that the artificial force of the presumption of payment arising from lapse of time is *conclusive*, unless overthrown by testimony of the character required to resist a debt barred by the statute of limitations.

Whilst the statute of limitations merely affects the *remedy*, it appears from these and other decisions in this State, that the artificial force of the presumption of payment affects the *debt* in cases where the force of such presumption is not overthrown by testimony of the character indicated. The only evidence that can remove the presumption of the payment of the debt of Robert Beaty, jr., is his written admission under oath in bankruptcy as

to the existence of the debt.    I conclude that this would be suffi-
cient in this proceeding in equity, to rebut the presumption of
payment from lapse of time, as to the note of Robert Beaty, jr.

It is further contended, under the eighth exception, that the
doctrine of equitable set-off or retainer can only apply to the
*personal estate*, as the title to the land descended to the heirs at
law upon the death of the intestate.    In this case the land has
been sold, and the proceeds are in court to be distributed under
the order of the court.    In the case of *Wilson* v. *Kelly*, *supra*,
it was held that until the son (W. D. F. Kelly) accounted for his
indebtedness, he was not entitled to receive any portion of his
father's estate.    In the more recent case, *In re Covin's estate*,
20 *S. C.*, 475, it is held that a note of a *devisee*, barred by the
statute of limitations, could not be set off against the devisee, but
his interest in the residue of lands and personal property directed
to be sold by the executors should be retained.

The reason given for the distinction is that the will gave the
devisee title against everybody except creditors ; and the note,
even if not barred by the statute, could not be counter-claimed
against the land.    But his interest in the residue, the court says,
is in a different position.    The will directs the residue to be sold
and the proceeds equally divided.    The devisee's portion of the
proceeds of sale will be in the hands of the executors—his cred-
itors—and they (the executors) will have the right to apply it to
the debt he owes.    This right is accorded to the executors as the
creditors of the devisee, having funds in their hands, to a portion
of which the devisee is entitled under the will.    If the title of
the devisee to the land devised is protected against all claims
except creditors, it would seem that the title of the heir at law to
intestate's land, cast by operation of law at intestate's death,
should have the same protection except as to creditors.

The administrators in this case could only be regarded as cred-
itors of the distributees to the extent of the *personal estate* in
their hands for distribution.    The administrators alone in this
case seek to have the doctrine of equitable set-off or retainer
applied.    The intestate's estate is entirely solvent.    Under such
circumstances the administrators invoke the aid of the court to do
what they can't do, to wit: to subject the real estate of the heir

at law to equitable retainer. According to the reasoning of the court in the case *In re Covin's estate, supra,* I conclude that the doctrine of equitable set-off or retainer should not be applied to the interests of the distributees *in the land of the intestate,* John P. Sartor. I, however, concur with the master, and conclude that the doctrine of equitable set-off or retainer should apply to the distributive interest of Robt. Beaty, jr., in the personal estate in the hands of the administrators of John P. Sartor. The master's report must, however, be modified to conform to these views.

The fourth and fifth exceptions refer to the indebtedness of W. S. McJunkin, under the judgment obtained against him, April 30, 1869, by James W. Sartor, the intestate son of John P. Sartor. The grounds relied upon by the assignees under their exceptions are payment, as well as discharge in bankruptcy. The assignment by W. S. McJunkin of his distributive interest was made subsequent to the death of John P. Sartor. In no event could the assignees occupy a better position than their assignor, the distributee. ' The judgment referred to has been assigned by the administrator of James W. Sartor, to the administrators of John P. Sartor, who was at his death sole distributee of his son, James W. Sartor. The judgment debt, therefore, became assets in the hands of the administrators of John P. Sartor for distribution.

Whilst the discharge of W. S. McJunkin in bankruptcy would prevent the judgment creating a lien upon the distributive share of W. S. McJunkin in the estate of John P. Sartor, yet the judgment overthrows any presumption of the payment of the *debt* arising from lapse of time. Under the authority of Wilson *v.* Kelly, *supra,* the debt is not discharged by bankruptcy. I conclude that the debt of W. S. McJunkin, evidenced by the judgment in favor of James W. Sartor, assigned to the administrators of John P. Sartor, should be set-off against the distributive share of W. S. McJunkin, in the *personal estate* of John P. Sartor; but not as to the real estate. To this extent the master's report must also be modified.

Under the sixth and ninth exceptions, the sealed note debts of W. S. McJunkin and John W. Sartor will be considered. The plea of payment has been interposed by the assignees, as to these notes. The master concludes that there is no difference, in prin-

ciple, between a note barred by the statute and a lapse of time raising a presumption of payment, in the application of the doctrine of equitable set-off or retainer. As the debt must be regarded as paid, and the artificial presumption, arising from lapse of time, must be regarded as conclusive, until overthrown by testimony of the character heretofore indicated, and as the statute of limitations merely affects the remedy and not the debt, I cannot concur in this view of the master.

The master only recommends that the debt of James W. Sartor should be off-set against his distributive interest in the *personal estate* of the intestate. The sealed note of W. S. McJunkin became due November 3, 1862, and the two sealed notes of John W. Sartor became due July 27, 1860, and August 10, 1861, respectively, each payable to the intestate, more than twenty years prior to his death. It does not appear from the testimony that there has ever been any payment or acknowledgment of either of these notes for more than twenty years prior to the intestate's death, and the only ground upon which the master held these notes subject to equitable set-off seems to be the analogy that he held to exist between the effect of a bar by the statute and the presumption of payment from lapse of time. This point was not considered in *Wilson* v. *Kelly*, or in the case of *In re Covin's estate, supra;* but from my view of the decisions as to the effect of the presumption arising from lapse of time, I conclude that the doctrine of equitable set-off or retainer cannot apply to the note of W. S. McJunkin and the two notes of John W. Sartor above referred to. The master's report as to these notes must be overruled.

The seventh exception alleges that the master erred in concluding that the purchases by the administrators at the sale of the personal property were made at the value of the articles purchased. The finding of the master is supported by the testimony, and will not be disturbed. This exception is overruled.

It is ordered and adjudged, that, except as overruled or modified by this decree, the master's report herein, filed October 3, 1885, be confirmed and made the judgment of this court.

From this decree, Beaty and McJunkin appealed upon the following exceptions:

1. For that his honor held that the note given by Robert Beaty, junior, to William Sartor, was subject to the rule of equitable retainer, out of Robert Beaty, junior's, share of the personal estate of John P. Sartor, deceased.

2. For that his honor held that the discharge in bankruptcy cannot avail the defendant, Robert Beaty, junior, in this action.

3. For that his honor held that the doctrine of equitable set-off or retainer, should apply to the distributive interest of Robert Beaty, junior, in the personal estate in the hands of the administrators of John P. Sartor's estate.

4. For that his honor held that the debts of W. S. McJunkin, evidenced by the judgment in favor of James W. Sartor, assigned to the administrators of John P. Sartor, should be set off against the distributive share of W. S. McJunkin in the *personal estate* of John P. Sartor.

5. For 'that his honor held as follows: "The finding of the master—as to the value of articles sold—is supported by the testimony, and will not be disturbed." When the referee himself testified upon the issue he was considering, upon a matter material to the issue.

6. For that his honor did not set aside the finding of the referee, as to the value of the articles sold, because the referee acted as witness and judge of an issue of fact in the same case.

7. For that his honor did not hold that John P. Sartor's receiving a dividend from the bankrupt estate of Robert Beaty, junior, prevented the operation of the doctrine of equitable retainer.

8. For that his honor held that the claim presented by the administrators of the estate of John P. Sartor, deceased, of the note given to William Sartor by Robert Beaty, junior, was in the same right as the claim of Robert Beaty, junior, for his distributive share of the personal estate of John P. Sartor, deceased— as regards the doctrine of equitable retainer.

9. For that his honor did not refer the matter of the value of the articles sold at the estate sale to a new referee.

Plaintiff and the administrators also appealed upon the following exceptions:

Because his honor, it is repectfully submitted, erred in hold-

ing as follows, to wit: 1. That the administrators in this case could only be regarded as creditors of the distributees to the extent of the *personal estate* in their hands for distribution.

2. That the doctrine of equitable set-off, or retainer, should not be applied to the interest of the distributees in *the land* of the intestate, John P. Sartor.

3. That the debt of W. S. McJunkin, evidenced by the judgment in favor of James W. Sartor, assigned to the administrators of John P. Sartor, should not be set-off against the distributive share of W. S. McJunkin, in the real estate of John P. Sartor.

4. That the doctrine of equitable set-off, or retainer, cannot apply to the note of W. S. McJunkin and the two notes of John W. Sartor.

5. That the interest of Robert Beaty, jr., and W. S. McJunkin in the proceeds of the sale of the real estate of John P. Sartor should not be applied to the debts of said parties to the estate of the intestate.

6. That the doctrine of equitable set-off, or retainer, did not apply when the debt of a distributee was evidenced by a sealed note more than twenty years past due.

7. That W. S. McJunkin had been discharged in bankruptcy.

8. That the administrators *alone* in this case seek to have the doctrine of equitable set-off, or retainer, applied.

9. For that his honor erred, it is respectfully submitted, in *not* holding as follows, to wit: That there was no difference, in principle, between a note barred by the statute of limitations and one barred by lapse of time, in the application of the doctrine of equitable set-off.

10. That the whole interest of those distributees who are indebted to the estate of the intestate was liable for the debts of such distributees, and that the interest of such distributees in the proceeds of the sale of the *real estate* was liable for such debts, as well as the respective interests in the *personal estate.*

*Mr. J. H. Rion,* for Beaty and McJunkin.

*Mr. David Johnson, jr.,* for the administrators.

July 19, 1886. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON.   It will be sufficient for the understanding of this case, to state the questions which are before us on appeal, with the further statement that the pleadings are in proper form to have these questions adjudicated, and that the facts involve them.    These questions are as follows :

1st.  Can the equitable doctrine of set-off or retainer be allowed to an administrator against the share of a distributee in the personal estate or against an heir at law as to his share in the real estate, one or both, by virtue of a sealed note held by said administrator on said distributee and heir, due more than twenty years before the action, which note was originally given to a third party, but had been in possession of the intestate for years before his death and up to his death, and had reached the possession of the administrator by virtue of his office as administrator, the said distributee having enumerated this note in a petition for bankruptcy, filed within twenty years, as unpaid, and as belonging to the intestate, and having since been discharged in bankruptcy, and the intestate having received dividends on said note from the bankrupt's assets ?   Under these facts, can the administrator claim the right at settlement of the estate to retain from the personal assets and the real estate of the intestate, so much of the share of the distributee (debtor), as may be necessary to discharge the note in question?   Or can this right be resisted and defeated on the ground, either of want of mutuality in contract, bankruptcy, or presumption of payment by lapse of time, one or all ?

2nd.  Can retainer be allowed an administrator against a distributee and his assignee on a judgment obtained within twenty years by a third party, and which the said administrator has become possessed of by transfer to him in payment of the interest of his intestate in the estate of the judgment creditor, since deceased ?   Can the claim of retainer be defeated for the want of mutuality in the contracts, preventing set-off?

3rd.  Can this doctrine of retainer be applied on sealed notes held by the administrator on distributees, and heirs of more than twenty years standing?   Or will the presumption of payment extinguish the notes and prevent the retainer ?

As to the first question, the Circuit Judge held, 1st, that the doctrine of retainer did not apply to the interest of a distributee

debtor, in the real estate of the intestate, subject to partition, nor in the proceeds thereof. 2nd, that it did apply as a general proposition to the interest of the distributee debtor, as to his share in the personal estate. 3rd, that discharge in bankruptcy of the distributee would not prevent the retainer, relying upon *Wilson* v. *Kelly*. 4th, that an acknowledgment of the debt by the distributee, within twenty years before action, in a petition filed for the benefit of the bankrupt act, was sufficient to prevent the presumption of payment from arising; and lastly, that the debts were in the same right, or sufficiently so, to authorize the set off, or retainer. As to the second proposition, he held that the judgment having been obtained within twenty years before action, no presumption of payment could arise, and the administrator being the legal holder of the judgment, as administrator, he could claim a set off, or retainer, even against the assignee of the distributee. As to the third proposition, he held that the presumption of payment arising from the lapse of the full period of twenty years before action, was conclusive, extinguishing the notes, and therefore leaving no room or ground for the claim of retainer—different in this respect from the statute of limitations, which only suspends the remedy, but does not presume payment.

The ruling of his honor upon the first proposition, that the doctrine of retainer did not apply to the interest of the distributee in the real estate of his ancestor, is supported by the case of *In re Covin's Estate*, 20 *S. C.*, 475. That it did apply to the personal estate, and that bankruptcy would not prevent its application, is supported by *Wilson* v. *Kelly*, 16 *S. C.*, 216. And it is hardly necessary to cite authority in support of the proposition, that the enumeration of the debt by the bankrupt in his sworn petition for the benefit of the bankrupt act, within twenty years before action brought, in which petition the bankrupt acknowledged the debt to be unpaid, and set it down as one of the claims entitled to a portion of his assets, was sufficient to prevent the presumption of payment, the acknowledgment giving a new starting point for the currency of the presumption. His honor held, further, that the objection, that the debts were not in the same right could not avail here.

Even admitting, for the sake of the argument, that the claim

of the administrator here, was not, and could not be, set up as a legal set off or counter claim to the distributee, yet that is not the principle upon which the doctrine of retainer is founded in a case like that before the court. "The right of retainer depends upon the principle, that the legatee or distributee is not entitled to his legacy or distributive share while he retains in his own hands a part of the funds out of which that and other legacies or distributive shares ought to be paid, or which is necessary to extinguish other claims on those funds. And it is against conscience that he should receive anything out of such funds without deducting therefrom the amount of the funds which is already in his hands as a debtor to the estate. And the assignee of the legatee or distributee in such case takes the legacy or distributive share subject to the equity which existed against it in the hands of the assignor." The above is an extract from the case of *Smith* v. *Kearney*, in which Chancellor Walworth delivered the opinion, and in which most of the authorities upon the subject are referred to and discussed, and especial reference is made to this case and the cases there cited, as being applicable not only to the immediate point now under consideration, but also to several other points involved in the case at bar. It was there held, that this doctrine did not apply to funds arising from the sale of real estate which descended to the debtor as one of the heirs at law, the proceeds of real estate converted into personalty being still considered as real estate. *Smith* v. *Kearney*, 2 *Barb. Ch.*, 534.

The same principle as that found in the extract above, has been perhaps more directly and clearly expressed by Lord Cottenham in *Cherry* v. *Boultbee* (4 *Myl. & Cr.*, 442-447), as follows: "It must be observed that the term set off is very inaccurately used in cases of this kind. In its proper use it is applicable only to mutual demands, debts, and credits. The right of an executor to retain a sufficient part of a legacy given by the creditor to the debtor to pay a debt due from him to the creditor's estate, is rather a right to pay out of the fund in hand, than a right of set off; such right of payment, therefore, can only arise where there is a right to receive the debt so paid, and the legacy or fund so to be applied in payment of the debt must be payable by the

person entitled to receive the debt.'' Whether, then, the claim in the hands of the administrator could be set up or not, as a strict counter claim, yet it being a debt against the distributee and a debt which he holds as administrator, the right of retainer under the above principle as to the personal estate seems to us to be complete, both against his distributee and his assignee.

This disposes of all of the questions embraced in the rulings of his honor above, except the one arising out of that ruling in which his honor differentiated a case where the debt of the distributee was barred by the statute, and a case where it was presumed paid by the lapse of twenty years or more before action, his honor holding in the latter case, that the presumption of payment was a bar to the retainer. We concur with this ruling. The lapse of twenty years, as has been said in several cases, has an artificial force, and extinguishes the debt, as effectually as absolute payment, in the absence of all such testimony, which in law would revive an unsealed note barred by the statute of limitations. *Boyce* v. *Lake*, 17 *S. C.*, 481, and the cases there cited. Such being the effect of the presumption, we think his honor was correct in holding in this case, that the retainer could not be claimed by the administrator against the sealed notes of over twenty years standing.[1]

In the application of these principles to the case at bar, Robert Beaty, jr., was held accountable for his note to the extent of his interest as a distributee in the personal estate of the intestate. So, too, the share of W. S. McJunkin in the personal estate was held subject to the judgment in the hands of the administrator against him, but the sealed notes against the said McJunkin and John W. Sartor, being presumed paid by the lapse of twenty years, were adjudged extinguished, and therefore could not give foundation to the right of retainer. It is stated in the decree of the Circuit Judge that W. S. McJunkin had been discharged in bankruptcy. This seems to have been a mistake, as admitted in the argument on both sides; that question, therefore, does not arise as to him. The judgment against McJunkin was obtained in April, 1869, and we do not see why this judgment did not

---

[1] See *White* v. *Moore*, (8) 23 *S. C.*, 456.—REPORTER.

have lien on the interest of McJunkin in the real estate of the intestate, thereby giving the administrator the right to have that interest subjected to its payment, in addition to the right of retainer as to his share in the personal estate, if necessary.

The counsel of defendants, appellants, has, by permission, reviewed the case of *Wilson* v. *Kelly, supra.* We have carefully considered the grounds presented in opposition to that case, and have not found them sufficient to overrule it. Previous to that case it had been decided, that a debt barred by the statute of limitations could still be claimed out of a legacy or distributive share of the debtor in the estate to which he was thus indebted, under the law of retainer as set forth above. This was upon the principle that the statute of limitations did not extinguish the debt, but only prevented a bar to an action thereon ; the moral obligation to pay still remaining, which obligation would support a promise to pay. See the cases referred to in *Wilson* v. *Kelly.* This principle, it was thought, applied to a discharge in bankruptcy ; that the discharge did not pay the debt, but prevented any further action for its recovery, leaving the debt unpaid and the moral obligation unaffected. In fact, that a debt due by a discharged bankrupt occupied almost the exact position of one barred by the statute, and could, like a debt barred by the statute, be paid out of a legacy or distributive share of the debtor in the estate to which he was indebted, by retainer.

In the case of *Cherry* v. *Boultbee* (4 *Myl. & Cr.,* 18 *Eng. Ch. R.,* 448), which the counsel claims overruled *Ex parte Man,* where the bankruptcy was held not sufficient to prevent the retainer, the facts were that the assignee in bankruptcy was claiming the legacy of the bankrupt as part of his assets, and the court held that inasmuch as the assignee was only liable on the debt to the extent of the dividend to which the creditor was entitled, the retainer could be allowed only to that extent, and that as to the balance of the debt a retainer could not be enforced. This was upon the ground that the party claiming the legacy, to wit, the assignee, did not owe the debt, except as to the dividend, and consequently the remainder of the legacy after the dividend was paid therefrom was due the assignee with no counter claim against it. The Lord Chancellor, in delivering the opinion in

that case, said: "In the present case, however, the bankruptcy of the debtor having taken place in the life time of the testatrix, her executors never were entitled to receive from the assignee more than the dividends upon the debt, and although the bankrupt had not obtained his certificate and the liability incident to that state remained upon him, yet he, for the same reason, was never entitled to receive the legacy, and consequently there was never a time at which the same person was entitled to receive the legacy and liable to pay the entire debt. The right, therefore, of retaining a sufficient sum out of the legacy to pay the debt, can never have been vested in any one.' The assignee who claims the legacy would, indeed, have been liable to the payment of any dividend upon the debt, had it been proved, and the master of the rolls proposed to the executors to make provision for deducting the amount of such dividend from the amount of the legacy." And he further says: "That in all the cases, except that of *Ex parte Man*, the liability to pay the debt and the right to receive the money had been at some time vested in the same person, and all that the court did in these cases was to consider that the party liable to pay the legacy had actually done what the law considers him entitled to do, namely, to apply a sufficient part of the legacy to the payment of the debt."

The facts in *Ex parte Man*, the Lord Chancellor says, were as nearly as possible the same as in the case he was discussing. *Ex parte Man* is reported in *Mont. & McA.*, 210. This volume has not been within our reach, but we suppose it was a case like *Cherry* v. *Boultbee, supra*, where the assignee of the bankrupt was claiming the legacy, and consequently a case like *Cherry* v. *Boultbee*, where the liability to pay the entire debt and the right to claim the legacy never vested in the same person, and consequently, as in *Cherry* v. *Boultbee*, the administrator or executor had no foundation to retain the legacy for said entire debt. In the case at bar, however, the distributive share in the estate of the intestate is claimed by the distributee himself. He owes the entire debt and he claims the distributive share. Thus the two are vested in the same person, and the state of things exists, the absence of which authorised the judgment in *Cherry* v. *Boultbee*,

overruling *Ex parte Man*, and which, had they existed in that case, would have no doubt resulted in a different judgment.

It is urged that the creditor here having received dividends out of the bankrupt assets, should prevent the retainer and *Orpen in re Beswick* v. *Orpen*, 16 *L. R. Ch. Div.*, 202, is referred to as sustaining this proposition. In that case, at a meeting of creditors by resolution, a composition of 2s. 6d. was accepted in satisfaction of the debts due to them. The executors did not prove the debt under the composition, and the debtor assigned his share in the estate to a third party, who sued the executor. The executor claimed the right to retain for the full amount of the debt. It was held that he could retain only to the amount of the composition, the court holding that the debt was within the scope and operation of the resolution of the creditors passed under the bankrupt act, and was bound by them, the 2s. 6d. being accepted as satisfaction of the whole debt. We do not understand that proving the debt and receiving dividends in bankrupt proceedings, is the same thing as resolution of composition, where the creditors agree to accept a certain amount in satisfaction of the whole, and, therefore, we do not regard the case of *Orpen* v. *Beswick* as applicable here.

Upon the whole, we sustain the Circuit Judge except as to the liability of W. S. McJunkin's share in the proceeds of the real estate to the judgment against him. This judgment having lien upon this share, it should be applied so far as may be necessary to the payment thereof.

As to the exception that the referee should not have testified on the matter of the value of the property purchased at the sale by the administrators. The principle contended for is doubtless correct. Eliminating this testimony from the case, that remaining seems quite sufficient to sustain the findings of fact on that subject.

It is the judgment of this court, that the judgment of the Circuit Court be modified to the extent of subjecting the share of W. S. McJunkin in the proceeds of the real estate to the judgment against him; and in every other respect that said judgment below be affirmed.